## MORGAN *v.* STATE.

### Opinion delivered June 19, 1922.

1. BANKRUPTCY—INJUNCTION AGAINST FILING PETITION IN BANK-RUPTCY.—The bankruptcy laws of the United States being paramount and exclusive, a State court, having jurisdiction over a corporation alleged to be insolvent and having appointed a receiver to wind it up, has no jurisdiction to enjoin the directors from filing a petition in bankruptcy.

2. INJUNCTION — VOID ORDER — PUNISHMENT.—Where the chancery court had no jurisdiction to issue an injunction, it had no authority to punish the disobedience thereof as for a contempt.

*Certiorari* to Jefferson Chancery Court; *John M. Elliott,* Chancellor; judgment quashed.

STATEMENT OF FACTS.

S. R. Morgan, M. B. Morgan and E. E. McIndoo filed a petition for certiorari in this court to review the action of the Jefferson Chancery Court in the case of *Security Bank & Trust Company and G. L. Roth, plaintiffs,* v. *Consumers' Ice & Coal Company et al., defendants,* wherein they were adjudged guilty of contempt of court, and the punishment of each one was fixed at a fine of $500 and a term of thirty days in jail.

It appears from the record that the Security Bank & Trust Company, a corporation organized and doing business under the laws of the State of Tennessee, and G. L. Roth brought suit in the chancery court of Jefferson County against the Consumer' Ice & Coal Company of Pine Bluff, Ark., a corporation organized and existing under the laws of the State of Arkansas, and other parties, for the purpose of having a receiver ap-

pointed to take charge of the assets and affairs of the Consumers' Ice & Coal Company.

The complaint alleges that the plaintiffs brought this suit as stockholders for the benefit of the creditors of the Consumers' Ice & Coal Company and for the benefit of all other stockholders of said company.

The complaint also alleges that the Consumers' Ice & Coal Company was organized for the purpose of furnishing ice to consumers from its place of business in Pine Bluff, Ark.; that in the year 1919 S. R. Morgan purchased nearly all of the stock in said corporation; that subsequently other stockholders acquired a substantial amount of stock in said corporation and asked for an accounting of the assets and affairs of the corporation; that S. R. Morgan, M. B. Morgan and E. E. McIndoo were all directors of said corporation; that E. E. McIndoo was its manager and S. R. Morgan was its president; that S. R. Morgan is insolvent and is not the proper person to be in charge of said corporation, and that the directors are insolvent and are employees of S. R. Morgan; that said directors are handling all the money of said corporation, and unless restrained will hold a meeting of the stockholders of said corporation on March 14, 1922, in Pine Bluff, Ark., for the purpose of re-electing themselves as directors of said company.

The plaintiffs further allege that there are now judgments against said corporation, and that, unless something is done to conserve the assets and to prevent their further dissipation through the mismanagement of said officers, the said creditors and stockholders of the said corporation will become greatly involved and the corporation will become insolvent. Other acts of mismanagement on the part of the directors were alleged in the complaint.

The prayer of the complaint was for the appointment of a receiver, and that if, upon proper investigation by the receiver, the court finds that the Consumers' Ice & Coal Company is insolvent, its affairs be settled

under our statutes relating to insolvent corporations. Crawford & Moses' Digest, secs. 1798-1800.

The plaintiffs further prayed for an accounting between the officers of said corporation and the plaintiffs, and that if, upon final hearing, said corporation was insolvent, a decree of dissolution should be made and its assets sold and divided among the creditors and stock-holders in accordance with law.

On March 4, 1922, Joe Nichol was duly appointed receiver by the court and a restraining order was issued as follows:

"It is therefore considered, ordered and adjudged and decreed that the said officers, S. R. Morgan, and each and every one of the directors of the Consumers' Ice & Coal Company, and employees, attorneys and agents, are enjoined and restrained from attempting to control or have anything to do with the assets and management of the Consumers' Ice & Coal Company, or calling any meeting for any purpose, either as directors or as a board of directors, or as stockholders, or a stockholders' meeting, and they shall desist from doing anything relative to the affairs of the Consumers' Ice & Coal Company, except under orders of this court."

On the same day Joe Nichol duly qualified as receiver and took charge of the assets of said corporation. Said order appointing a receiver and restraining the defendants in the matters above stated was issued by the court without notice or service of summons upon any of the defendants. The defendants, however, were informed of the proceedings of the court, and at a directors' meeting of said corporation held in the city of Little Rock later in the day on March 4, 1922, the following resolution was passed:

"A motion was duly made and seconded that, on account of financial embarrassment of the company and its inability to meet obligations, and on account of the fact that some of the stockholders have filed a petition for receiver, that the president be authorized to take

such steps as may be necessary to immediately place the company in voluntary bankruptcy. The said motion was duly carried and adopted, and the president was authorized, empowered and directed to immediately take such steps.''

S. R. Morgan and M. B. Morgan were present and secured the passage of the resolution. Pursuant to its terms, S. R. Morgan late Saturday afternoon directed his attorney to file a petition in bankruptcy in the Federal court for the Consumers' Ice & Coal Company. G. E. Garner, his attorney, filed such petition on March 6, 1922, at ten o'clock in the morning, which was a short time before the injunction above referred to was served upon S. R. Morgan and the other petitioners.

Because of the resolution of the directors, S. R. Morgan caused a voluntary petition in bankruptcy to be filed in the Federal court asking that the Consumers' Ice & Coal Company be adjudged a bankrupt, and on this account the chancery court of Jefferson County issued a citation for contempt against S. R. Morgan, M. B. Morgan and E. E. McIndoo in the case above referred to, in which a receiver was appointed to take charge of the assets of said corporation, and said petitioners were enjoined from having anything to do with the assets of said corporation or calling a meeting for any purpose of its directors and stockholders.

On hearing the citation for contempt, the chancery court adjudged that S. R. Morgan, M. B. Morgan and E. E. McIndoo be adjudged guilty of contempt, and the punishment of each one was fixed at a term of thirty days in the county jail and a fine of $500.

Other facts are set out in the transcript, but the above facts, we think, are sufficient to present the issue raised by the writ of certiorari and upon which our opinion and decision will be based.

*G. E. Garner* and *Danaher & Danaher* for appellants.

The court was without jurisdiction to issue the order of injunction on account of lack of service. 13 C. J.

13-14, sec. 14; 91 Ark. 533; 81 Ark. 462; 55 Ark. 205; *Id.* 565; 93 U. S. 274.

The court was without jurisdiction of the subject matter. Sec. 5798 C. & M. Dig.

A State court cannot enjoin a person from applying to a court of bankruptcy to be adjudged a bankrupt. 7 C. J. 42; 49 Ga. 384.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants.

Secs. 1484-1485 C. & M. Digest give the chancery court the power to punish for contempt. The court has jurisdiction. 123 Ark. 341.

After the appointment of a receiver by a State court, the directors of a corporation are without power to authorize the filing of a petition in voluntary bankruptcy and the surrender of its property to the bankrupt court. 271 Fed. 788.

Hart, J. (after stating the facts). It will be observed from the statement of facts that at the time the chancery court of Jefferson County appointed a receiver of the assets of the Consumers' Ice & Coal Company, a domestic corporation, in the suit of some of its stockholders, the directors of said corporation were enjoined from calling a meeting for any purpose and from doing anything relative to the affairs of the corporation, except under the orders of the court. S. R. Morgan and the other directors were not served with notice of the application for the appointment of the receiver, but were informed by friends of the proceedings in the chancery court. Later on in the day a meeting of the directors of the corporation was called at Little Rock, Ark., and a resolution was passed authorizing the president to take the necessary steps to place the corporation in voluntary bankruptcy. The resolution recites that this was done on account of the inability of the corporation to meet its obligations and of the further fact that some of the stockholders had filed a petition in a State chancery court for the appointment of a receiver.

Pursuant to the terms of said resolution, S. R. Morgan directed his attorney to take the necessary steps to have said corporation adjudged a voluntary bankrupt, and a petition was duly filed in the Federal court in bankruptcy for the purpose.

The chancery court duly cited S. R. Morgan and other petitioners for contempt on account of their action. Upon a hearing in the chancery court they were adjudged to be guilty of contempt in violating the injunction order of the chancery court wherein they were restrained from calling any meeting as directors, or from doing anything relative to the affairs of the Consumers' Ice & Coal Company except under orders of the chancery court. This raises the question of whether the chancery court had the right to make any such order.

The allegations of the complaint in the case wherein the receiver was appointed and the injunction restraining S. R. Morgan and the other directors of the corporation as aforesaid issued were to the effect that the officers and directors of the corporation were mismanaging its assets. The complaint also contained a prayer for an accounting, and that, if the corporation be found to be insolvent, it be wound up under the statutes of the State relating to insolvent corporations.

Art, 1, sec. 8, of the Constitution of the United States provides that Congress shall have power to pass uniform laws on the subject of bankruptcies throughout the United States. Congress has exercised this power and enacted a general bankrupt law for the United States, and business corporations like the Consumers Ice & Coal Company may become voluntary bankrupts under its provisions. See Barnes' Federal Code, 1919, sec. 9089.

In construing this act in the case of *In re Watts and Sachs, petitioners,* 190 U. S. p. 1, the court held that the operation of the bankruptcy laws of the United States cannot be defeated by insolvent corporations applying to be wound up under State statutes. The court

said the bankruptcy law is paramount and the juris-
diction of the Federal courts in bankruptcy, when prop-
erly invoked in the administration of the affairs of in-
solvent persons and corporations, is essentially
exclusive.

In *Hickman* v. *Parlin-Orendorff Co.,* 88 Ark. 519,
this court held that our State insolvency act has been
superseded by the bankruptcy act of Congress, in so far
as they relate to the same subject-matter and affect the
same persons. So, too, in *Roberts Cotton Oil Company*
v. *F. E. Morse & Company,* 97 Ark. 513, this court held
that the Federal bankruptcy act does not repeal or abro-
gate a State law in conflict with it, but supersedes
and suspends its operation for the time being upon per-
sons or cases within the purview of its provisions. All
these cases and many others bearing on the subject are
cited by Judge TRIEBER in the case of *In re Weedman
Stave Co.,* 199 Fed. 948.

In that case it was held that our statute authoriz-
ing a chancery court of the State to take possession of
the assets of an insolvent corporation and distribute
the same through its receiver *pro rata,* among its cred-
itors, after payment of wages and salaries, which con-
stitute preferred claims, requiring all creditors to prove
their claims within a stated time or be barred, and dis-
solving all preferences obtained within ninety days, con-
stitute a State insolvency act which was suspended by
the bankruptcy act of Congress.

It was further held that the appointment of a re-
ceiver for a corporation thereunder is absolutely void
for want of jurisdiction, and that such a receiver may
be required to turn over the assets of the corporation to
a receiver or trustee appointed by the bankruptcy court
at any time thereafter, whether in four months or not.

The Attorney General raises the point that these
decisions do not apply because it is claimed that the ap-
pointment of a receiver by the chancery court of Jef-
ferson County, Ark., was made upon the allegations of

mismanagement by the directors of the corporation and not upon the ground of insolvency.

The Attorney General relies upon the case of *In re Associated Oil Co. Inc.*, 271 Fed. 788. In that case it was held that after a receiver has been appointed for a corporation by a State court, under authority of the laws of the State, with power to take possession of and hold the property of the corporation, its directors are without power to authorize the filing of a petition in voluntary bankruptcy and the surrender of its property to the bankruptcy court.

It is true that in that case, as in the present one, the petition in bankruptcy was filed pursuant to a resolution of the board of directors of the corporation, declaring that the affairs of the corporation were in a precarious state, owing to the pendency of a suit in the State court for a receiver; but there the analogy ends. The State court in that case did not enjoin the directors from filing a petition in bankruptcy and did not attempt to punish them for contempt in so doing. The receiver appointed by the State court appeared in the bankruptcy court and contested the right of the directors to file a voluntary petition in bankruptcy. The bankruptcy court was of the opinion that the appointment of a receiver by the State court took the control of the assets out of the corporation, so that there was nothing to surrender to a trustee in bankruptcy. Furthermore, in the exercise of discretion the bankruptcy court declined to interfere with the State court in the matter. The reasoning was that to allow an adjudication in bankruptcy would undo all that had been accomplished in the State court to prevent the mismanagement of the affairs of the corporation.

This was a decision of the Federal bankruptcy court which has, as we have already seen, exclusive jurisdiction in bankruptcy matters. It is one thing for a bankruptcy court to declare under what circumstances it will exercise its discretion in matters relating to the

bankruptcy law and quite a different thing to say that this discretion may be exercised by State courts. To hold that State courts have any jurisdiction to adjudicate under what circumstances a person or corporation entitled to the benefit of the bankrupt laws may file a voluntary petition in bankruptcy would be to oust the Federal bankruptcy courts of that exclusive jurisdiction vested in them by the Constitution of the United States and declared by the Supreme Court of the United States.

To say that a State court may enjoin a person from filing a petition in bankruptcy for any reason is to that extent to take away the exclusive jurisdiction of the bankruptcy court in the matter. In other words, it was a question for the Federal court in bankruptcy and not for the chancery court to declare under what circumstances the corporation was entitled to be adjudged a bankrupt, or whether it was entitled at all to be declared a bankrupt.

Again, it may be said that the complaint in the suit in the chancery court of Jefferson County by the stockholders of the corporation asks for an accounting on the part of the directors of the corporation. M. B. Morgan and other directors were made defendants to the action. There was a direct prayer that, if the corporation be found to be insolvent upon such accounting, its affairs be wound up under secs. 1798-1800 of Crawford & Moses' Digest relating to winding up the affairs of insolvent corporations.

This allegation brings the case squarely within the decisions of the Supreme Court of the United States and of this court cited above. The order of the chancery court, in so far as it enjoins S. R. Morgan, M. B. Morgan and E. E. McIndoo from holding a directors' meeting for the purpose of filing a voluntary petition in bankruptcy in the Federal court, was void. The chancery court had no jurisdiction to make such order, and therefore no jurisdiction to punish the disobedience thereof as for contempt of court.

It follows that the decree of the Jefferson Chancery Court holding S. R. Morgan, M. B. Morgan and E. E. McIndoo guilty of contempt of court was error, and the decree adjudging them guilty of contempt will be set aside and quashed.